**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| LINDY VALENZUELA and JOHN VALDES, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ALLIANCE CLOUD SERVICES, LLC,<br><br>Defendant. | Civil Action No.<br><br>Hon.<br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND** |

## INTRODUCTION

1. Plaintiffs Lindy Valenzuela and John Valdes, on behalf of themselves and all others similarly situated, bring this class action against Defendant Alliance Cloud Services, LLC ("Defendant"), which owns and operates the data center located at 415 E Prairie Ronde Street, Dowagiac, Michigan 49047-1348 (hereinafter the "Data Center").

2. Through its operation of the Data Center, Defendant has emitted, and continues to emit, unreasonable and excessive noise onto Plaintiffs' property, causing property damage through nuisance and negligence.

## PARTIES

3. At all times relevant hereto, Plaintiff Lindy Valenzuela is a citizen of Michigan who has owned and resided at her home located at 301 Louise Ave, Dowagiac, MI 49047.

4. At all times relevant hereto, Plaintiff John Valdes is a citizen of Michigan who has owned and resided at his home located at 415 Louise Ave, Dowagiac, MI 49047.

5. Defendant is a foreign limited liability company organized under the laws of Delaware and with principal place of business in Dowagiac, Michigan.

1

6. Upon information and belief, Defendant Alliance Cloud Services, LLC, is a wholly owned subsidiary of Hyperscale Data, Inc., a for-profit corporation incorporated in Delaware and with principal place of business in Las Vegas, Nevada. Therefore, Defendant is a citizen of at least Delaware and Nevada.

7. At all times relevant hereto, Defendant, its agents and predecessors, exercised ownership and control over the Data Center located at 415 E Prairie Ronde Street, Dowagiac, Michigan 49047-1348.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. See 28 U.S.C. § 1332(a)(1).

9. Separately and in addition to diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), this Court has original jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). CAFA jurisdiction is appropriate because there are 100 or more Class Members and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and costs. Additionally, Defendant is a citizen of a different state from at least one Plaintiff, establishing minimal diversity.

10. The Court has personal jurisdiction over Defendant, who has sufficient minimum contacts with the State of Michigan, because it regularly conducts substantial business in Michigan through its operation and maintenance of the Data Center, and Plaintiffs' claims arise through such contacts with the forum state.

11. Exercising personal jurisdiction over Defendant for its contacts satisfies due process and does not offend traditional notions of fair play and substantial justice because

Defendant has purposefully availed itself of the laws of the State of Michigan and it benefits by regularly conducting business through its operations in the state.

12.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events, acts, and/or omissions giving rise to Plaintiffs' claims took place in this judicial District, and because much, if not all, of the property that is the subject of this action is situated in this judicial District.

## FACTUAL ALLEGATIONS

13.    Defendant owns and operates the Data Center located at 415 E Prairie Ronde Street, Dowagiac, MI 49047-1348, where it provides artificial intelligence (AI) and high-performance computing (HPC) services, including Bitcoin mining, colocation and hosting services.

14.    Plaintiffs reside within the proposed Class Area and within 1 mile of the Data Center.

15.    On frequent, recurrent, and continuing occasions too numerous to list herein, Plaintiffs' properties have been and continue to be physically invaded by excessive noise from Defendant's Data Center.

16.    The noise which entered Plaintiffs' properties originated from Defendant's Data Center as a result of Defendant's intentional and/or negligent acts and/or omissions.

17.    These excessive noise emissions caused by Defendant's Data Center have been and continue to be emitted across public and private land within the Class Area.

### *Defendant's Data Center Operations*

18.    Defendant's Data Center, currently operating at a 30 megawatt (MW) capacity, generates revenue through digital asset mining and by providing colocation and hosting services for other AI, machine learning, and HPC platforms and services.

19.    Defendant's Data Center has been operational since March 2022.

20.    Defendant has recently announced that it has acquired 48.5 acres of land to expand its Data Center's campus, doubling its current acreage.[1]

21.    Defendant's Data Center currently operates at 30 megawatts (MW) of power and is expected to increase its capacity to 340 MW after executing an agreement with the local utility provider.[2] The expansion of power capacity is roughly equivalent to the power needed to service 200,000 to 300,000 homes.

22.    Data centers like Defendant's require substantial and continuous onsite power supply for their servers, which invariably require the use of generators and sophisticated cooling systems to regulate temperature and humidity in their server rooms.[3] These systems operate 24 hours a day, 7 days a week.

23.    These servers produce significant amounts of heat that can damage the chips integral to data processing. As a result, data centers, including Defendant's Data Center, employ extensive cooling systems to manage the heat produced by the servers.

24.    The cooling system is integral to the Data Center's operation, and some cooling systems account for up to 40% of a data center's energy consumption.[4]

25.    Defendant's Data Center generates significant noise pollution from backup diesel generators and heating, ventilation, and air conditioning (HVAC) systems, including chillers,

---

[1] https://www.prnewswire.com/news-releases/hyperscale-data-enters-into-agreement-to-expand-michigan-ai-data-center-campus-with-48-5-acre-acquisition-302728199.html (Last accessed May 26, 2026)

[2] https://www.prnewswire.com/news-releases/hyperscale-data-targets-full-buildout-of-340-mw-michigan-ai-data-center-campus-in-2029-302509243.html (Last accessed May 26, 2026)

[3] https://www.eesi.org/articles/view/communities-are-raising-noise-pollution-concernsabout-data-centers (Last accessed May 26, 2026)

[4] *Id.*

cooling towers, air-handling units, and condenser fans. These systems may create persistent industrial noise with internal levels of 70-90 A-weighted decibels (dBA) and community-facing levels that can exceed 48-60 dBA without adequate mitigation.[5]

26.    Defendant's Data Center operates 24 hours a day, 7 days a week. The noise emitted from the Data Center and experienced by Plaintiffs and the Class is not only excessive, but constant at all hours of the day, every day of the week.

27.    A properly operated, maintained, and/or constructed data center will contain, capture, or otherwise prevent excessive noise emissions from its generators and cooling systems by implementing soundproofing equipment, such as noise-absorbent materials, sound blankets, and sound attenuators.

28.    A properly operated, maintained, and/or constructed data center will contain, capture, or otherwise prevent excessive noise emissions from its generators and cooling systems by utilizing acoustic barriers, shields, and walls in and around the perimeter of its property.

29.    A properly operated, maintained, and/or constructed data center will contain, capture, or otherwise prevent excessive noise emissions from its generators and cooling systems by designing and implementing low-noise cooling systems.

30.    Defendant has failed to implement adequate soundproofing equipment at its Data Center that properly absorbs, captures, and/or prevents the escape of noise, thereby resulting in the offsite emission of excessive noise beyond its property.

---

[5] George, Babu. *Health Consequences of Large Data Centers: Air Pollution, Noise, Water Use, and Environmental Justice*. No. cnwyb_v1. Center for Open Science, 2026. Stable link: https://osf.io/download/69a8a7d20a7fcea28b79774f/ (Last accessed May 26, 2026).

31.    Defendant has failed to implement adequate acoustic barriers, shields, or walls, that absorb, mitigate, and/or prevent the escape of noise, thereby resulting in the offsite emission of excessive noise beyond its property.

32.    Defendant has failed to implement adequate low-noise cooling systems that contain, mitigate, and/or prevent the escape of noise, thereby resulting in the offsite emission of excessive noise beyond its property.

### *Defendant's Excessive Noise Emissions*

33.    Defendant has failed to follow proper industrial practices to prevent the offsite emission of noise, and has failed to absorb, capture, mitigate, and/or prevent noise from escaping its Data Center, thereby invading the homes and properties of Plaintiffs and the Class.

34.    The noise emissions from Defendant's Data Center are loud, annoying, and constant.

35.    Defendant's Data Center has been the subject of frequent and numerous complaints from residents in the nearby residential area.

36.    Numerous households have contacted Plaintiffs' counsel documenting the noise they attribute to Defendant's Data Center.

37.    Below is a small sampling of the factual allegations made by putative class members to Plaintiffs' counsel, demonstrating the Data Center is the source and cause of the noise, which has caused damages to neighboring properties and their use and enjoyment thereof:

a.    Plaintiff Lindy Valenzuela reported that "My husband and I (Mitchell Gourley) have been unable to utilize our yard since this facility began operation a few years ago. On warmer days (when the noise becomes louder) it is impossible to stay

6

outside for longer than 10 minutes at a time before succumbing to headaches. The noise also penetrates the inside of the home (windows closed)."

b.  Plaintiff John Valdes stated that "we can't open our windows in the evening or daytime to enjoy the fresh air—especially while sleeping. We also have to limit our outside time with friends and yard work."

c.  Putative Class Member Joyce Felthouse stated that "I can no longer sit in my backyard and enjoy the peace and quiet, I can't have my windows open. I can hear the noise over my TV. No one will [buy] my house."

d.  Putative Class Members Gerald and Donna Dodd reported that "we cannot open our doors or windows. We cannot sit on our wraparound porch- even though we have furniture out there" due to the noise from Defendant's Data Center.

38.  Defendant's Data Center has faced scrutiny by local government officials. On April 1, 2026, Mayor Patrick Bakeman of the City of Dowagiac published an open letter to Defendant regarding its announcement of expanding its Data Center:

"[Y]ou've bred uncertainty and eroded our confidence that you will do the right thing in our community. Here's what's expected of you: ... 2. In response to your 2025 press release regarding your growth plans, City Council and staff have spent the last several months preparing for your plan's submission. We've spent time and money educating ourselves on the issues, consulting with experts in the data center field, and enacting new legislation to protect our community, like adding specific, enforceable decibel levels to our noise ordinance. We are ready to review your plans to ensure that you're on track to achieve full regulatory compliance."

39.  Following review with expert consultants and a survey of industrial noise, Dowagiac City Council proceeded to enact a new enforceable decibel level to its city noise ordinances.

40.     The City of Dowagiac's new noise ordinance will prohibit all persons from producing sound levels in residential-zoned districts exceeding 65 dBA from the hours of 7:01 a.m. to 10:00 p.m. and 55 dBA from 10:01 p.m. to 7:00 a.m.

41.     Defendant's Data Center has otherwise been subject to significant media attention regarding its noise emissions.[6,7,8,9]

42.     One local resident of Dowagiac, Terry Raab, stated that he no longer opens his windows in the summer because of the insufferable noise and that "If we want to resell the house, who's going to want to buy the house with that noise? No one's going to want to buy."

43.     Another local resident, Jerry Dodd, reported that "People get out of their cars and they say, 'do you have to listen to that? All the time? And it's 24 hours a day. It doesn't stop."

44.     The Data Center has emitted and continues to emit excessive noise outside the bounds of its property.

45.     The excessive noise emissions are offensive to Plaintiffs and the putative Class Members and would be offensive to a reasonable person of ordinary health and sensibilities.

46.     The excessive noise emissions have caused property damages and substantially interferes with the abilities of Plaintiffs and the putative Class to reasonably use and enjoy their homes and properties.

---

[6] https://www.yahoo.com/news/articles/video-captures-unbearable-noise-coming-070000210.html (Last accessed May 26, 2026).
[7] https://abc57.com/news/dowagiac-city-manager-speaks-on-potential-data-center-expansion-concerns (Last accessed May 26, 2026).
[8] https://www.mlive.com/news/2026/04/a-las-vegas-company-says-it-will-expand-michigan-data-center-locals-are-in-the-dark.html (Last accessed May 26, 2026).
[9] https://wwmt.com/news/local/ai-data-center-expansion-dowagiac-loud-noise-complaints-residents-southwest-michigan-hyperscale-megawatt-bitcoin-wwmt (Last accessed May 26, 2026).

47.    The invasion of Plaintiffs' and the Class's properties by excessive noise has reduced the value of those properties.

48.    Plaintiffs and the putative Class are a limited subset of individuals in Cass County and the Class Area, which includes only owner-occupants and renters of residential properties who live within the Class Area.

49.    The proposed Class Area is home to a wide range of commercial and recreational enterprises, including but not limited to retail trade, dining, healthcare and social assistance, and ministry.

50.    Members of the public including, but not limited to, businesses, employees, commuters, tourists, visitors, worshippers, minors, customers, clients, students, and patients have been harmed by the excessive noise emissions from the Data Center into public spaces. However, unlike the Plaintiffs and the putative Class, members of the public who are outside the Class definition have not suffered damages in the form of diminished property values and/or the loss of use and enjoyment of their property.

51.    The invasion of Plaintiffs' and the Class's properties by excessive noise has interfered with the use and enjoyment of those properties, resulting in adverse impacts on private residential property values.

52.    Defendant knew or should have reasonably known about its excessive noise emissions through the numerous complaints, administrative records, communications with local government, public scrutiny, and media attention it has received regarding the Data Center.

53.    Despite clear knowledge of its excessive and constant noise emissions, Defendant continues to operate the Data Center in breach of its duty of ordinary care and diligence.

54.    Defendant breached its duties by negligently and improperly constructing, maintaining, and/or operating the Data Center. This includes but is not limited to:

    a.  Constructing, operating, and/or maintaining inadequate soundproofing equipment for its Data Center operations, including its cooling systems and/or generators;

    b.  Constructing, operating, and/or maintaining inadequate acoustic barriers, walls, and shields for its Data Center operations, not limited to insufficient acoustic coverage on or around the perimeter of the Data Center;

    c.  Failing to construct, operate, and/or maintain low-noise cooling systems at the Data Center;

    d.  Failing to develop and/or implement an adequate noise monitoring system;

    e.  Failing to develop and/or implement an adequate noise prevention plan;

    f.  Failing to utilize other noise prevention, elimination, and mitigation measures and technology available to Defendant; and,

    g.  Other failures revealed during discovery.

55.    Defendant intentionally, knowingly, recklessly, willfully, and/or negligently failed to properly construct, maintain, and/or operate the Data Center. Through Defendant's failures, the Data Center caused an invasion of the Plaintiffs' and the putative Class's properties by noise on frequent, intermittent, and reoccurring occasions too numerous to list individually.

## CLASS ALLEGATIONS

56.    Plaintiffs bring this action individually and on behalf of all persons as the Court may determine to be appropriate for class certification, pursuant to Federal Rule of Civil Procedure 23. Plaintiffs seek to represent a Class of persons defined as:

**All owner-occupants and renters of residential property situated within one (1.0) mile of Defendant's Data Center at any time within the applicable statute of limitations.**

Plaintiffs reserve the right to modify the class definition and/or propose one or more subclasses if discovery reveals such modifications are appropriate.

57.     This case is properly maintainable as a class action pursuant to and in accordance with Federal Rule of Civil Procedure 23 in that:

a. The Class, which includes thousands of members, is so numerous that joinder of all members is impracticable;

b. There are substantial questions of law and fact common to the class including those set forth in greater particularity herein;

c. Questions of law and fact such as those enumerated below, which are all common to the class, predominate over any questions of law or fact affecting only individual members of the class;

d. A class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

e. The relief sought in this class action will effectively and efficiently provide relief to all members of the class;

f. There are no unusual difficulties foreseen in the management of this class action; and

g. Plaintiff, whose claims are typical of those of the Class, through their experienced counsel, will zealously and adequately represent the Class.

## A. Numerosity

58.     Based on available data, there are hundreds of residential households within the Class Area and therefore the Class is so numerous that joinder is impracticable.

## B. Commonality

59.     Numerous common questions of law and fact predominate over any individual questions affecting Class Members, including, but not limited to the following:

a. Whether and how Defendant negligently and knowingly failed to reasonably construct, maintain, and/or operate the Data Center to prevent offsite noise emissions;

b. Whether Defendant owed any duties to Plaintiffs;

c. Which duties Defendant owed to Plaintiffs;

11

d. Which steps Defendant has or has not taken to control the emission of noise through its maintenance and operation of the Data Center;

e. Whether and to what extent the Data Center's noise was dispersed over the Class Area;

f. Whether it was reasonably foreseeable that Defendant's failure to properly construct, maintain, and/or operate the Data Center would result in an invasion of Plaintiffs' property interests;

g. Whether the degree of harm suffered by Plaintiffs and the Class constitutes a substantial annoyance or interference under an objective legal standard; and,

h. The proper measure of damages incurred by Plaintiffs and the Class.

60. The availability of common proof as to a limited subset of the above questions of law and fact may otherwise permit issue certification under Fed. R. Civ. P. 23(c)(4).

### C. Typicality

61. Plaintiffs have the same interests in this matter as all the other members of the Class, and their claims are typical of all members of the Class. If brought and prosecuted individually, the claims of each Class Member will require proof of many of the same material and substantive facts, rely upon the same legal theories, and seek the same type of relief.

62. The claims of Plaintiffs and the other Class Members have a common origin and share a common basis. The claims originate from the same failure of the Defendant to properly construct, maintain, and/or operate the Data Center.

63. All Class Members have suffered injury in fact resulting in the loss of property value by reason of Defendant's failure to properly construct, maintain, and/or operate the Data Center as described herein, including a substantial interference with the use and enjoyment of their properties as well as diminished property values.

**D. Adequacy of Representation**

64.    Plaintiffs' claims are sufficiently aligned with the interests of the absent members of the Class to ensure that the Class's claims will be prosecuted with diligence and care by Plaintiffs as representatives of the Class. Plaintiffs will fairly and adequately represent the interests of the Class and do not have interests adverse to the Class.

65.    Plaintiffs have retained the services of counsel, who are experienced in complex class action litigation, and in particular class actions involving air pollution and nuisance emissions from industrial facilities. Plaintiffs' counsel will adequately prosecute this action and will otherwise protect and fairly and adequately represent Plaintiffs and all absent Class Members.

**E. Class Treatment is the Superior Method of Adjudication**

66.    A class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

    a.  Individual claims by the Class Members would be impracticable as the costs of pursuit would far exceed what any one Class Member has at stake;

    b.  Little or no individual litigation has been commenced over the controversies alleged in this Complaint and individual Class Members are unlikely to have an interest separately prosecuting and controlling individual actions;

    c.  The concentration of litigation in these claims in one forum will achieve efficiency and promote judicial economy; and,

    d.  The proposed class action is manageable.

67.    Further, class treatment of Plaintiffs' claims is appropriate and necessary to ensure that common relief is available to the Class and that Class Members can vindicate their rights in a single proceeding.

68.    Notice can be provided to members of the Class by U.S. Mail and/or publication.

13

## COUNT I – PRIVATE NUISANCE

69.     Plaintiffs restate the allegations of this Complaint as if fully restated herein.

70.     Defendant owed, and continues to owe, a duty to Plaintiffs and to the Class to prevent and abate the unreasonable interference with, and the invasion of, their private property interests.

71.     The excessive noise which enters the Plaintiffs' and the Class's properties originated from the Data Center, which was improperly and unreasonably constructed, maintained and/or operated by the Defendant as described herein.

72.     The Plaintiffs and the Class utilize their properties residences and reside within the Class Area.

73.     The excessive noise which entered Plaintiffs' and the Class's properties originated from Defendant's Data Center, which is in close proximity to the Class Area.

74.     By failing to reasonably design, construct operate, repair, and maintain its Data Center, Defendant has caused an invasion of Plaintiffs' and Class's properties by excessive noise on unusually frequent occasions that are too numerous to comprehensively list herein.

75.     The excessive noise emissions invading Plaintiffs' and Class's properties are indecent and offensive to individuals with ordinary sensibilities. The excessive noise substantially and unreasonably interferes with Plaintiffs' and Class's enjoyment of life and the ability to use and enjoy their properties. This includes, but is not limited to:

   a. Forcing Plaintiffs and Class Members to remain inside their homes and forego the use of their yards, porches, and other spaces, and to generally refrain from outdoor activities;

   b. Causing Plaintiffs and Class Members to keep their doors and windows closed when they would otherwise have them open;

14

    c.   Depriving Plaintiffs and Class Members of the value of their homes and properties; and,

    d.   Interfering with Plaintiffs' and Class Members' sleep and preventing them from reasonably relaxing in their homes and/or on their properties.

76.    By failing to reasonably construct, maintain, and/or operate the Data Center, Defendant has wrongfully, negligently, and knowingly created a foreseeable risk of harm and caused an unreasonable invasion of Plaintiffs' and Class's properties by excessive noise.

77.    The excessive noise emissions from Defendant's Data Center are recurring and ongoing.

78.    The excessive noise emissions from Defendant's Data Center are abatable with ordinary care.

79.    By failing to reasonably construct, maintain, and/or operate the Data Center, thereby causing excessive noise to invade Plaintiffs' and Class's properties, Defendant intentionally, knowingly, recklessly, and/or negligently created a nuisance that substantially and unreasonably interferes with Plaintiffs' and Class's properties.

80.    Defendant owed, and continues to owe, a duty to Plaintiffs and the putative Class to prevent and abate the unreasonable interference of their private property interests.

81.    As a foreseeable, direct, and proximate result of the forgoing misconduct by Defendant, Plaintiffs and the Class suffered, and continue to suffer, damages to their properties as alleged herein.

82.    Plaintiffs and Class Members did not consent to the invasion of their properties by Defendant's excessive noise, which is ongoing and constitutes a nuisance.

83.    Any social utility that is provided by the Data Center is patently outweighed by the harm suffered by the Plaintiffs and the Class, who have on frequent occasions been deprived of

the full use and enjoyment of their properties and have endured substantial loss in the use and value of their properties.

84.     Defendant's substantial and unreasonable interference with Plaintiffs' and Class's use and enjoyment of their properties constitutes a private nuisance. Defendant is liable for all damages arising from such nuisance, including compensatory, injunctive, and/or exemplary relief.

## COUNT II – PUBLIC NUISANCE

85.     Plaintiffs restate the allegations of this Complaint as if fully set forth herein.

86.     Plaintiffs and the Class utilize their properties as residences and reside within the Class Area.

87.     The excessive noise that enters Plaintiffs' and the Class's properties originated from Defendant's Data Center, which is in close proximity to the Class Area.

88.     The unreasonable and excessive noise emitted by Defendant's Data Center has been, and continues to be, emitted across public and private land through the Class Area.

89.     By failing to reasonably construct, operate, repair, and maintain the Data Center, Defendant has caused an invasion of the Plaintiffs' and Class's properties by excessive noise on frequent occasions that are too numerous to individually list herein.

90.     The excessive noise emissions invading Plaintiffs' and Class's properties are indecent and offensive to individuals with ordinary sensibilities. The excessive noise substantially and unreasonably interferes with the Plaintiffs' and Class's enjoyment of life and the ability to use and enjoy their properties as described herein.

91.     As a foreseeable, direct, and proximate result of the forgoing misconduct by the Defendant, Plaintiffs and the Class suffered, and continue to suffer, damages to their properties as alleged herein.

16

92.    The damages suffered by Plaintiffs and the Class are uniquely injurious because they suffer harm relating to the use and enjoyment of their lands and properties, and decreased property values, which are not harms suffered by the general public.

93.    The proposed Class Area is home to a wide range of commercial and recreational enterprises, including but not limited to retail trade, dining, healthcare and social assistance, and ministry.

94.    The general public is also impacted by the Data Center's noise emissions. Many members of the general public are impacted by the noise when they work, study, worship, commute, shop, or engage in recreation in the Class Area, but they suffer no harm to the use and enjoyment of their land and property, or decreased property values.

95.    Plaintiffs and the Class did not consent to the invasion of their properties by Defendant's noise, which is ongoing and constitutes a nuisance.

96.    Any social utility that is provided by the Data Center is patently outweighed by the harm suffered by Plaintiffs and the Class, who have on frequent occasions been deprived of the full use and enjoyment of their properties and have endured substantial loss in the use and value of their properties.

97.    Defendant's substantial and unreasonable interference with Plaintiffs' and Class's use and enjoyment of their properties constitutes a public nuisance. Defendant is liable for all damages arising from such nuisance, including compensatory, injunctive, and/or exemplary relief.

## CAUSE OF ACTION III – NEGLIGENCE

98.    Plaintiffs restate the allegations of this Complaint as if fully restated herein.

99.    Defendant owed, and continues to owe, a duty to Plaintiffs and the Class to prevent and abate the unreasonable interference with, and the invasion of, their private property interests.

17

100.    A properly constructed, operated, and maintained data center will not emit excessive noise into neighboring residential areas.

101.    Defendant breached its duties by negligently and improperly constructing, maintaining, and operating the Data Center. This includes, but is not limited to:

a.  Constructing, operating, and/or maintaining inadequate soundproofing equipment for its Data Center operations, including its cooling systems and/or generators;

b.  Constructing, operating, and/or maintaining inadequate acoustic barriers, walls, and shields for its Data Center operations, not limited to insufficient acoustic coverage on or around the perimeter of the Data Center;

c.  Failing to construct, operate, and/or maintain low-noise cooling systems at the Data Center;

d.  Failing to develop and/or implement an adequate noise monitoring system;

e.  Failing to develop and/or implement an adequate noise prevention plan;

f.  Failing to utilize other noise prevention, elimination, and mitigation measures and technology available to Defendant; and,

g.  Other failures revealed during discovery.

102.    By failing to properly construct, maintain, and/or operate its Data Center, Defendant has failed to exercise its duty of ordinary care and diligence.

103.    Defendant's breach of its duty of care was the direct and proximate cause of the invasion of Plaintiffs' and Class's homes by constant excessive noise.

104.    Such invasions by excessive noise were the reasonably foreseeable result of Defendant's misconduct, and Plaintiffs and the Class have suffered damages to their properties as alleged herein. Such damages include but are not limited to the loss of use and enjoyment of their properties and the diminution of property values.

18

105.    By failing to properly operate and maintain the Data Center, Defendant has failed to exercise its duty of ordinary care and diligence so that excessive noise would not invade Plaintiffs' property.

106.    Defendant knowingly, recklessly, and with conscious disregard for the rights of Plaintiffs and the Class, failed to prevent the invasion of excessive noise upon Plaintiffs' and the Class's properties.

107.    Defendant could reasonably anticipate that the invasion of the Data Center's excessive noise upon the Plaintiffs' and Class's properties would result in property damages in the form of the loss of use and enjoyment and the diminution of property values.

108.    Defendant is liable for all damages arising from such negligence, including compensatory, injunctive, and/or exemplary relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the proposed Class, pray for judgment as follows:

A.  Certification of the proposed Class by order pursuant to Fed. R. Civ. P. 23;

B.  Designation of Plaintiffs as representatives of the proposed Class and designation of their counsel as Class Counsel;

C.  Judgment in favor of Plaintiffs and the Class Members and against Defendant for each cause of action stated herein;

D.  An award to Plaintiffs and the Class Members for compensatory and exemplary damages, including pre- and post-judgement interest;

E.  An award of attorneys' fees and costs, including pre- and post-judgement interest as allowable by law;

F.  An Order holding that the entrance of the aforementioned excessive noise upon Plaintiffs' and Class's properties constitutes a nuisance;

19

G. An Order holding that Defendant was negligent in causing excessive noise to repeatedly invade and interfere with Plaintiffs' and the Class's private residential properties;

H. An award to Plaintiffs and the Class Members for injunctive relief not inconsistent with the Defendant's local, state, and federal regulatory obligations; and

I. Such further relief, both general and specific, that this Honorable Court deems just and proper.

## **JURY DEMAND**

Plaintiffs respectfully demand a trial by jury on all issues raised in this Complaint, pursuant to Fed. R. Civ. P. 38.

Dated: May 26, 2026

**LIDDLE SHEETS P.C.**
*/s/ Laura L. Sheets*
Laura L. Sheets (P63270)
Steven D. Liddle (P45110)
D. Reed Solt (P86302)
Trenten J. Ingell (P88748)
*Attorneys for Plaintiffs*
975 E. Jefferson Avenue
Detroit, MI 48207-3101
(313) 392-0015
Sliddle@lsclassaction.com
Lsheets@lsclassaction.com
Rsolt@lsclassaction.com
Ingell@lsclassaction.com

20